The next case is Roku v. ITC, 2023-13-17, and when Mr. Richards is settled, we'll hear from Mr. Baker. This is basically Claim 10, isn't it? That's part of it, Your Honor, but as we'll discuss, it also involves the issue of consideration of events occurring after the date of the complaint. So may it please the Court, good morning again, Your Honors. The key issue in this appeal is whether Roku can rely on additional events that occurred after the filing of the complaint to show that Roku satisfied the requirements for a domestic industry in the process of being established. What about the first, the resolution of the first case? If we find against you on the Radio Shack as a reference, what does that do to this case? Well, I think there's two hurdles to overcome, Your Honor, before we would render this case moot. So the first issue is- For whom to overcome? For the other side. If we can prevail on either that Radio Shack is not a prior art reference because it was not publicly accessible, or if we prevail on our arguments about Claim 10 that we did not talk about in the prior argument, namely that Claim 10 requires the steps of the iterating to be performed by a processor, if we prevail on either of those, then that would not render this case moot. But can you answer his precise question on if we find against you on the first appeal that was just argued in terms of this accessibility of the Radio Shack reference, do we need to decide anything in this appeal with respect to Claim 10? Yes, I think so, because just because Radio Shack was a prior art reference does not resolve our arguments in the IPR about the validity of Claim 10. And the Radio Shack reference was not at issue in the ITC proceedings. Yeah, but the hypothetical was you lose the first appeal. I'm sorry? You lose the first appeal. There's nothing left here, right? No. If we lose, we had additional arguments we did not talk about in the prior argument about why Claim 10 is, even if Radio Shack is prior art, it still does not satisfy Claim 10. I don't understand. If we held, if we sustained the board's decision that Claim 10 is unpatentable, this case is moot. That is true. That is true, yes. If you find that Radio Shack is prior art and you affirm their decision on Claim 10, then that would render this appeal moot. I agree with that. I'm just saying that it's not just about Radio Shack being prior art. There's also a substantive argument about why it doesn't meet Claim 10 that we argued in our briefing for the IPR proceeding. Did that answer your question, Your Honor?  Okay. All right. I'd like to continue then to explain why the Commission's interpretation of the statute is improper. They have interpreted this court's prior case law to hold that they are precluded from considering events occurring after the date of the complaint in determining whether there's a domestic industry in the process of being established. That's based on a mistaken interpretation of this court's precedence. This court's decisions in Bally, Motiva, and Philip Morris did not set forth any type of general rule that precludes consideration of post-complaint evidence. Rather, each of those cases either limited their holdings to the particular facts of that case or the statement regarding evaluating the evidence as of the date of the complaint were not necessary to the decision and, therefore, were dicta. So, I'd like to start with the text of the statute, because that is what... In the interest of time, though, I thought there might be one part that we need to address here, and I thought that would be with respect to the 511 patent. So, taking the hypothetical and, of course, assuming that the answer that you've already given to Judge Dyke in response to that is in effect, why don't you reorder your argument to start with anything you want to talk about with respect to the 511 patent? Well, Your Honor, the 511 patent is expired, and the only issue is whether the court should vacate the decision. And so, in our view, there's other issues that we think... I'm happy to answer any questions about that, but we thought the briefing on that was pretty clear. We think the Federal Circuit's precedent is clear from the INVT case, and the ITC even agrees with us that it should be vacated. So, I think the case was pretty clear, and so I was planning to focus on other issues. But if there's questions, I'm happy to answer them. So, I would like to focus on the two issues that we need to prevail on in order to be able to proceed in the ITC on the 875 patent, which is domestic industry and the validity of Claim 10. And so, with respect to domestic industry, I already explained that this Court's prior cases on their facts did not reach this particular issue. It did not announce a general rule precluding consideration of post-complaint evidence. In particular, the statute, Section 1337C, states that the Commission shall determine whether or not there is a violation of this section. It doesn't say the Commission should determine whether there was a violation of the section. And the use of the present tense there is significant because it indicates that in rendering a decision, the Commission should consider all the evidence that's before it at the time it makes its decision. In other words, it should consider all the evidence that's in the evidentiary record, even if that evidence concerns events after the date of the complaint. And it's also consistent with the legislative history, which makes clear that Congress's intent in enacting the statute was to make it easier for IP owners that are developing industry to be able to seek relief from the ITC. And precluding consideration of post-complaint evidence would make it harder for IP owners to protect their rights. And since domestic industry and the process of being established is an ongoing process, there's no indication that Congress intended to preclude consideration of post-complaint evidence. But there wasn't even a prototype of this remote control. So how could that satisfy even the development of the industry, much less the establishment of the industry? Well, the Commission has correctly held that an actual prototype or article, although that's required for a domestic industry, that's not required for a domestic industry in the process of being established. In other words, a complaint can show through other documents, specifications, and schematics, and computer code, and other things, how the product will operate. It doesn't require the existence of an actual article. And so that's the facts here. But fundamentally, it's a question of what the proper legal interpretation of the statute is, and whether the statute precludes consideration of post-complaint evidence. If the court agrees with us that the statute does not preclude that, then the court should vacate and remand to the Commission to consider all the evidence in the record and to determine whether it met the standards that are required. So I'd also like to talk briefly about Claim 10. In this case, we have argued that the phrase, iterating via a processor and the memory, through remote-controlled code sets corresponding to a brand, means that the remote automatically steps through the remote-controlled code sets without the user having to repeatedly press a key. And that's based on how that term is used, how the phrase iterating is used throughout the specification. And in fact, it's used eight separate times in the spec to describe situations where the iterating is done by the remote. And that's the only examples in the specification. And so in our view, the specification has implicitly defined the phrase, the whole iterating phrase, to be referring to automatically progressing through the code sets and not to cover a user having to repeatedly press a button to proceed through them. And so that is a claim construction error that the Board, sorry, the Commission made. And in fact, in the Ombuds Phillips decision this court held, that claim terms should be construed in light of the specification and that the specification can define terms by implication. And that's exactly what we believe is going on here in the case of the 875 patent. With respect to obviousness, I'd like to touch on the issue of reasonable expectation of success. UEI never argued below that there was a reasonable expectation of success, even though that's one of the requirements for showing obviousness. Now we acknowledge that there are Federal Circuit cases saying that a tribunal does not, you don't have to have an explicit finding in a decision or ruling from a tribunal explicitly saying that there was a reasonable expectation of success because there could be an implicit finding. But this case is different because UEI never made an argument about reasonable expectation of success. And therefore, the Board, sorry, the Commission rather, could not have made an implicit finding when UEI did not even argue that. And moreover, the Commission's rules provide that failing to make an argument weighs that argument. So the Commission could not have made a finding where UEI had not argued for reasonable expectation of success. Additionally, with respect to the motivation to combine, as we explained in our briefing, the Board's finding lacks substantial evidence because it was based on conclusory expert opinion and was based on features that were not even claimed in the 875 patent. In particular, UEI's experts said that it would be easier to have the remote proceed through the codes automatically. But he provided no explanation for why it was allegedly easier. And he failed to discuss any considerations that would have actually made it harder. So in our view, that's a clear example of conclusory expert testimony that based on this Court's precedent cannot constitute substantial evidence when it's purely conclusory. Additionally, he relied on the auto-scan feature, which is a feature where you test all of the codes in a remote across all the brands to argue that the large number of key presses would cause repetitive stress injury. But the claims here do not cover the auto-scan feature. It covers the brand search feature. And so his testimony about a motivation based on auto-scan is irrelevant to the claims that are at issue here. So unless the Court has further questions for me, I'll save my remaining time for rebuttal. We will hold it for you. Thank you. Mr. Richards for the Commission. You're going to take nine minutes. Yes, Your Honor. May it please the Court, I'd like to start out just by orienting where these cases stand together and make sure there's clarity on that. It is precisely as Your Honor suggested, if this Court finds that the PTAP correctly found Claim 10 invalid, all of the 875 patent issues that are in this appeal will become moot. At that point, all that would be left for the Court is this 511 vacatur issue. The Court would need to decide what to do with that. In the Commission's view, the Court's precedents in INVT and Kyosung are squarely on point here. We're not aware of any reason to depart from them. Under INVT and Kyosung, vacatur is the appropriate thing to do in an ITC investigation when a patent expires during the pendency of the appeal. I'll note to the extent it's helpful for the Court dealing with the arguments that are before it. It's actually INVT and you can find it on page 1370 of the INVT opinion. It deals expressly with the Microsoft and PowerTech opinions that are kind of the key subject of the intervener's argument against vacatur. But again, we see no principled reason to depart from what the Court did in Kyosung and INVT here. If the Court does need to get into the 875 patent issues, it's alright with the Court. I'll go through them in the same order my friend did just now. So we'll start with the domestic industry. I guess I would disagree that there's a key point here and it's just domestic industry. There are three independent bases to affirm the Commission's no violation finding here. Domestic industry is one of them, but then there are the two invalidity grounds for the 875 patent as well. If the Court affirms any one of those three, it would be sufficient to dispose of all the 875 issues. It should affirm the determination on domestic industry because the Commission did precisely what this Court has told it to do in Motiva and in Phillips. I understand the assertion I heard from my friend is that those cases really aren't as on point as the Commission has represented they are. But I thought it would be helpful to read what this Court said just in 2023. From Phillips, I'm sorry from Philip Morris in footnote 4, it said the filing date of the complaint is the relevant date at which to determine if the domestic industry requirement is satisfied. And it cites to Motiva for that proposition. To the extent there's any question about sort of is there wiggle room left, I'll note for the Court Motiva was also a case about a domestic industry in the process of being established. Is this relevant date issue coming up in other ITC proceedings or is this unique? As far as I know, this is unique. As I stand here before you, I'm not aware of any other case where we're dealing with this right now. Obviously, it just came up in Philip Morris. I don't think it was the highlighting issue there. But this isn't an issue I can represent to you that I see in every appeal or anything like that. I'll note, I think there's also a disagreement here. On the statutory language, I don't think it supports the interpretation that my friend is arguing for. I believe we noted in our brief, if you take just the present tense of the words in the statute, then the conclusion has to follow that even for domestic industries that exist, not just domestic industries in the process of being established, then those also should be adjudged at the close of the evidentiary record. But if we accept that as the right reading, then really Philip Morris and Motiva mean nothing at all then. It struggles to when they would ever be relevant under that kind of reading. So to the legislative history, we highlighted this in our brief, but the two things I wanted to note for the court specifically that I think are most helpful, and you'll see there are two reports. There's a House report and a Senate report. They are effectively identical in content here, so you can look to either one. When the Congress was talking about this, or in the process of being established language, it was talking about what someone has to do to quote, bring an action under section 337. They're talking about what you have to do to bring the action, I think is indicative that they were thinking about what has happened when you file your complaint. And then the other part I wanted to point out in the same report is Congress was expressed that they didn't want to see this in the process of being established language used as a loophole to the industry requirement. And I think that's sort of what we're getting awfully close to here. The idea is that when you file your complaint, you don't actually need any kind of industry. Not one that exists, not one that's in the process of being established. As long as you allege that there might be one at some time in the future, that's enough to get into a section 337 investigation. And I think when Congress was talking about not wanting a loophole, that's pretty much what they were talking about. If I can switch gears to the invalidity issues, unless the court has more questions on domestic industry. So I'll start with the claim construction issue. I understand the dispute to boil down here that Roku is essentially arguing for an implicit definition of iteration. I think it's effectively conceded that there is no plain language excluding user input. There is no express redefinition of that term in the specification anywhere. The argument is that everywhere in the specification, user input is excluded. So the term must be construed that way. I would just point the court to figure five, which is the flow chart which describes how this process works. And specifically steps six through 11 in that figure is the iteration loop. And in that, you'll see in steps eight and 10 of the iteration loop, it expressly calls for user input. I think the fact that that example exists in the specification defeats this implicit redefinition idea. Because again, for an implicit redefinition of a term, you need to have it used consistently throughout the entire patent. And that didn't happen here. So if the court agrees with that, it can affirm the anticipation to finding from the commission. And again, that would completely dispose of the 875. If the court, for whatever reason, was disinclined to address the claim construction dispute, it could take up the obviousness dispute, which I submit should also be affirmed. Here we're talking about an exceptionally simple modification. It is quite literally a matter of everyone admits doing this was in the prior art. Would it have been within an ordinary skilled artisan's abilities? And would they have been motivated to switch to pressing instead? There are factual findings on that, on both the motivation to combine and a reasonable expectation of success. You can find the motivation to modify at appendix 2699 through 10700. I'm sorry, 10699 through 10700. That's expert testimony from intervener's expert. You can find it from the same expert on appendix 10755 as well. On the reasonable expectation of success, here you have both experts have acknowledged that this isn't a hard modification to make. Roku's own expert admitted that this isn't particularly complicated. I submit to the court what this is, is essentially a paradigmatic example of the KSR known technique motivation, where you have a technique of holding a button and a technique of pressing a button, which are acknowledged in the patent itself as prior art, and testimony that it wouldn't have been hard to recode these remotes, and that doing so would have made them remote easier to use. That is enough to show obviousness. Your Honor, so those are the three independent bases to affirm the commission. Unless there are additional questions, I'll cede the rest of my time. Thank you very much. Thank you, counsel. Mr. Davidson? May it please the court, and I would reemphasize what we heard from the commission. I agree completely that there's nothing to resolve in this appeal as it relates to the 875 patent if you affirm the PTAB's decision to claim 10 is invalid. Why are you opposing vacatur and mootness with respect to the 511? Yes, we are opposing. We do not believe that the issue is moot, and I'm happy to go right into that, because that issue remains regardless of the outcome of the other case. The issue is not moot, because we have pending in the Central District of California, Roku, who sued my client, UEI, on behalf of using Claim 5 of the 511 patent. The key distinction that we see from the case that's before you and the cases everyone has cited is the 511 patent was found indefinite as a matter of law during claim construction. That sets it apart from all of the other cases that every person has cited to you. We believe that matters of law, there's one answer. If this court affirms the commission's finding that the Claim 5 of the 511 patent is invalid as indefinite, we believe that has collateral consequences on the case pending in the Central District of California. That's why we feel that the issue is not moot. The most analogous case that we've been able to locate is the Microsoft decision that we cited to you, where the Federal Circuit found that claim construction issues weren't moot in that case. But, to be direct, no one has cited, not Roku, the commission, or myself, a case directly on point that is dealing with a question of indefiniteness coming out of the ITC on an expired patent. I think I know your answer to this, but how do you distinguish the INVT case? The INVT case, the issues there were infringement and invalidity, not a question of law, of indefiniteness coming out of claim construction, where there's no factual dispute. In the underlying proceeding, the Claim 5 of the 511 patent has two states, a connected and a disconnected state. Everybody agreed the claim was inoperable in the disconnected state. It doesn't work. That's why the ALJ and then the commission found it indefinite. If it's invalid as a matter of law, based on that, it's invalid as a matter of law everywhere, and we shouldn't have to go back and relitigate these issues in California just to come back here for another appeal years from now. That's why we think the issue is not moot. But no one has, as I understand it, this exact fact pattern has never been presented to the court, but it stands to reason it's indefinite as a matter of law. That should apply everywhere. That means there's collateral consequences in the case the issue's not moot. Turning to the other issues, and I'm not going to retread over everything we heard from the commission, but just to hit a couple fine points on the head. If we decide to not agree with the PTAB, the claim 10 is invalid, and we're looking at the anticipation question, I would start with anticipation here is a question of fact that we would be looking at for substantial evidence. And there is substantial evidence in the record that the Phillips prior art remotes that we presented in the ITC case anticipate. The only dispute between the parties is whether pushing channel up over and over, is that scanning and iterating? And the record before you is filled with substantial evidence that that would still anticipate the claims. So just so we're clear, we would be looking at substantial evidence on that finding, which is another reason to dispose of the 875 patent. Last but not least, if we agree with Roku's claim construction that's been rejected by the ALJ, the commission, and the PTAB, we then do have the obviousness determination in this case. Where the commission determined that it would be obvious to modify that Phillips remote control to use the press and hold. And that's well within the skill set of a person of skill in the art, Dr. Balakrishnan, their expert, agreed the modification would be simple. So ultimately, the way I see this case, and what I would think should happen, is if the PTAB's determination is affirmed, everything with the 875 patent is moot, and we would ask you not vacate the commission's decision because there are collateral consequences with respect to the 511 patent. And with that, unless there's further questions for me, I would rest. Thank you, counsel. Mr. Baker has some rebuttal time. And you'll address the Vega tool question? Certainly, your honor. It's okay if I get to that, or do you want to start with that? Well, you never know when you're going to get questions, and your time will run out. I would answer the question. Let me start with the Vega tool question, and then I would like to turn to the other issues that were addressed by counsel. So on the Vega tool, we agree with the commission that this court's precedents are clear. Counsel for UEI is trying to draw some unique distinction for cases dealing with indefiniteness, but indefiniteness is just a matter of claim construction, and this court's other cases have dealt with claim construction, like the Hyosung case, and this court held that even though there were claim construction issues and there was another district court case pending, that when the patent expired it rendered the appeal moot. So even though this court has not specifically addressed whether vacatures are appropriate when there's an indefiniteness ruling, this court has addressed the issue when there's a claim construction ruling, which is also a question of law. So we think the court's case law is quite clear, and we agree with the commission that the invalidity ruling on the 511 patent should be vacated. Let me turn next to the issue about this court's Philip Morris case, which counsel for the ITC argued, assigned to a footnote, allegedly made clear that the filing date of the complaint is the date for determination, and you can't consider evidence after that date. And I don't think that's an appropriate reading of the case. In the case, the key issue, the issue that was decided was whether FDA approval is required in order for a product to qualify as a domestic industry product or a domestic industry in the process of being established. And this court held that no, that FDA approval is not required, and so that was the holding of the case. Now in a footnote, the court said that the date for determination is the date of the complaint, and cited to the case. But that footnote was not necessary to the court's decision, and so in our view, that constitutes dicta. And it is not a binding, precedential ruling on this question. Similarly, the other earlier cases, in the Bally case, the issue was that the complainant had a domestic industry at the time the complaint was filed, but lost it by the time of the... I apologize, I'm taking you off of your kind of... No, I'm happy to answer whatever's on the court's mind. What is the effect on the other pending case if we vacate with respect to the 511 patent? Opposing counsel raised a concern about what the impact would be on other pending cases, and I wanted to know how you respond to that. I think it will help to make clear that the ITC's decision is not binding on the court. We think that... On the district court, and that district court should make an independent ruling, an independent decision on it. So we think that's already the law, but this court's standard practice, which makes sense, is to vacate decisions where a party could not appeal it because of the expiration of the patent. We didn't even have the opportunity to get a ruling on the substance of it, and so in that situation, this court has held in all the cases that are cited in the briefs, that vacature is appropriate because appellate review was not possible. Thank you, Your Honor, I appreciate your time. Thank you. Thank you to both counsel, all counsel, the case is submitted.